1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11   MICHAEL LAWRENCE LHEVAN,      )      NO. SACV 16-1367-GW (AGR)
                                   )
12             Plaintiff,          )
                                   )
13        v.                       )
                                   )      REPORT AND
14   TODD SPITZER, et al.,         )      RECOMMENDATION OF UNITED
                                   )      STATES MAGISTRATE JUDGE
15             Defendants.         )
                                   )
16                                 )
                                   )
17   _____)

18        The court submits this Report and Recommendation to the Honorable

19   George H. Wu, United States District Judge, pursuant to 28 U.S.C. § 636 and

20   General Order No. 05-07 of the United States District Court for the Central District

21   of California.  For the reasons set forth below, the magistrate judge recommends

22   the disposition set forth below.

23
24
25
26
27
28

1

2

# I.

## **PROCEDURAL BACKGROUND**

On July 22, 2016, Plaintiff, proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983.  He named the following defendants in their official capacity:  (1) Todd Spitzer, head of the Orange County ("County") Board of Supervisors; (2) Tony Rackauckas, Orange County District Attorney; and (3) Sandra Hutchens, Orange County Sheriff.  (Dkt. No. 1.)  On November 22, 2016, Plaintiff filed a First Amended Complaint.  (Dkt. No. 34.)  On August 23, 2017, the District Court dismissed the FAC with leave to amend.  (Dkt. Nos. 56, 58.)  On October 13, 2017, Plaintiff filed a Second Amended Complaint ("SAC").  (Dkt. No. 62.)

On November 27, 2017, Plaintiff filed a Third Amended Complaint ("TAC"). He named the same three defendants in their individual and official capacities and added the County as a defendant.  (Dkt. No. 67.)  On December 11, 2017, the County and the individual defendants in their official capacity filed a motion to dismiss the TAC.[1]  (Dkt. No. 70.)  On September 17, 2018, the District Court (1) dismissed *Monell*[2] Claims 1, 2, 3, 4, 6, 7, 8, 11, 13 and 14 without leave to amend; (2) dismissed *Monell* Claims 9, 10, 12 and 15 with leave to amend; and (3) denied the motion to dismiss *Monell* Claim 5.  (Dkt. Nos. 79, 87.)

On January 14, 2019, Plaintiff filed a Fourth Amended Complaint ("FOAC"). (Dkt. No. 97.)  The FOAC was served on the three individual defendants in their individual capacity.  (Dkt. Nos. 105-09.)  On April 30, 2019, Defendants filed a motion to dismiss all claims except *Monell* Claim 5 against the County under Rule 12(b)(6), or in the alternative for a more definite statement as to Claims 1, 2, 3, 4, 7, 8, 11 and 15 under Rule 12(e).  (Dkt. No. 110.)  The District Court (1) granted Plaintiff's request to dismiss Defendant Spitzer from this action; (2) granted

---

[1]     The individual defendants had not yet been served with summons in their individual capacity.

[2]     *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).

2

1   Defendants' motion to dismiss Claims 1, 2, 3, 7, 11, and 13 without leave to

2   amend; (3) granted Defendants' motion to dismiss *Monell* claims 8 and 12 without

3   leave to amend; (4) granted Defendants' motion to dismiss *Monell* claims 4, 6, 9,

4   10, 14, and 15 with leave to amend; (5) granted Defendants' motion to dismiss

5   Claims 4, 6, 8, 9, 10, 12, 14, and 15 against Defendant Hutchens with leave to

6   amend; (6) denied Defendants' motion to dismiss Claim 5 against Defendant

7   Rackauckus; (7) denied Defendants' motion for more definite statement; and (8)

8   granted Plaintiff leave to file a Fifth Amended Complaint consistent with the

9   Report and Recommendation.  The District Court advised Plaintiff that, if he did

10  not file a timely Fifth Amended Complaint, the action would proceed on the

11  surviving claims in the Fourth Amended Complaint.  (Dkt. No. 123.)

12      Plaintiff filed a Fifth Amended Complaint ("FIAC").  (Dkt. No. 127.)  The

13  Fifth Amended Complaint states that Defendant Spitzer is removed as a

14  defendant and names the following three defendants: Defendant Hutchens;

15  Defendant Rackauckas; and Orange County.  The individuals are named in an

16  individual and official capacity.  (*Id.* at 3-4.)

17      Defendants filed a motion to dismiss various *Monell* claims and all claims

18  against Defendant Hutchens in her individual capacity for failure to state a claim,

19  qualified immunity, and the fact that she is deceased.  Defendants also move for

20  a more definite statement under Rule 12(e).  (Dkt. No. 130.)  Plaintiff filed an

21  opposition.  (Dkt. No. 133.)  Defendants filed a reply.  (Dkt. No. 136.)  The matter

22  was taken under submission.

23                              **II.**

24              **ALLEGATIONS OF FIFTH AMENDED COMPLAINT**

25      **A.  Factual Allegations**

26       On April 15, 2015, Deputy Elcock of the Orange County Sheriff's

27  Department ("OCSD") arrived at Plaintiff's former residence.  (FIAC, Dkt. No. 127

28

1   at 5.)³  Plaintiff opened the door, not feeling he had committed a crime.  There

2   were four deputies on the scene, one of whom commented "this has got to

3   happen."  Plaintiff was arrested for "annoying phone calls" and was booked at the

4   Men's Central Jail.  (*Id.*)

5        Plaintiff felt sick to his stomach and asked the deputy to use the restroom.

6   The deputy told him to "go in the corner" inside the cell, where other people had

7   defecated and urinated.  Plaintiff was held in the cell without restroom access for

8   a 14- to 16-hour period, and was not allowed any phone calls.  (*Id.*)

9        When he was released, Plaintiff complained about his treatment to the

10  OCSD and the Orange County District Attorney's office ("OCDA") even though

11  reporting misconduct by government agencies "usually results in retaliation."  (*Id.*)

12  Plaintiff agreed to meet with OCDA investigators.  On April 15, 2015, Plaintiff met

13  three investigators, including Fred Nichols ("Investigator Nichols"), at a restaurant

14  in Lake Forest.  Plaintiff was "very cooperative," but Investigator Nichols "lied at

15  least 3 times," once in a declaration.  (*Id.* at 6.)  Plaintiff was arrested.  During the

16  arrest, investigator Nichols communicated with his office and said "the lawyers

17  are making the decisions" and "the lawyers were basically ordering arrest."  (*Id.*)

18  Defendant Rackauckas retaliated against Plaintiff because Plaintiff had once

19  inquired about having Rackauckas' son, a plumber, do some plumbing work on

20  Plaintiff's condo.  (*Id.*)

21       Plaintiff was arrested and booked at the "OC Jail," this time on charges of

22  criminal threats and threatening a public official.  (*Id.* at 7.)  He was traumatized

23  by seeing the same unnamed deputy who had "engaged in torture" four days

24  earlier.  That deputy told him, "someone has it out for you," and remarked to other

25  officers, "I wonder if he knows he has a taser to his head."  (*Id.*)  Plaintiff was

26  denied his statutory right to make three phone calls within three hours of his

27  _____

28       ³ Page citations are to the page numbers assigned by CM/ECF in the
    header.

4

1    arrest.  He was stripped of his clothes, put on "detox medicine," and was denied
2    access to his prescription medication because investigator Nichols had falsely
3    stated that Plaintiff was not "under the influence of any legal narcotics."  (*Id.* at 7-
4    8.)  Investigator Nichols signed a declaration falsely stating Plaintiff engaged in
5    "felony behavior" to obtain funds for a bail bond.  (*Id.* at 15.)  Plaintiff's bail
6    "should have been $20,000 for a weak case," but was set initially at $500,000 and
7    then lowered by a judge to $120,000.  (*Id.* at 7-8.)  He posted bail and was
8    released.  (*Id.* at 8.)

9         On April 23, 2015, investigator Nichols maliciously procured a search
10   warrant for Plaintiff's computers without probable cause and lied in a police
11   report.  (*Id.* at 8-9.)  On the evening of April 24, Investigator McLean and "a few
12   OCSD" came to Plaintiff's house to ask about emails sent to Karyn Stokke.  (*Id.* at
13   11.)  Plaintiff denied any wrongdoing.  (*Id.*)  The following morning, April 25, "a
14   team of OCSD and OCDA police force" arrived at Plaintiff's home with a warrant
15   and started breaking down the door.  (*Id.*)  Commander Hutchcraft arrested
16   Plaintiff.  She did not allow Plaintiff to bring his wallet to jail and he never saw it
17   again.  (*Id.* at 11-12.)  A new case was filed with "an abundance of charges."  (*Id.*
18   at 12.)  Prosecutor Cynthia Nichols ("prosecutor Nichols") presented a declaration
19   by investigator McLean falsely stating Plaintiff engaged in illegal behavior to
20   obtain funds for a bail bond.  She filed "a Penal Code § 1289, claiming a
21   continuing 'danger to the community,'" although there was no evidence of any
22   violence.  (*Id.*)  Bail should have been set at $50,000, but prosecutor Nichols
23   recommended $1,020,000 and the state court set bail at that amount.  (*Id.* at 13.)

24        During this third period of detention, on April 26, Plaintiff was physically
25   assaulted in the shower by inmates Lowery and Hayes.  (*Id.* at 13.)  He told the
26   nurse he had a badly bruised chest bone.  The nurse threatened him with
27   protective custody in a condescending manner and sent him upstairs to think
28   about it.  A deputy wrote him up for being disrespectful.  (*Id.* at 13-14.)  Plaintiff

1   spent the night before his preliminary hearing chained to a wall.  A jail doctor put

2   Plaintiff on the wrong medication, Zyprexa.  (*Id*. at 14-15.)  Plaintiff was later

3   returned to the same cell where he had been assaulted.  (*Id.* at 15.)

4   At some point, Plaintiff was moved to "medical mod" under Cal. Welf. &

5   Inst. Code § 5150.[4]  Plaintiff had no access to a phone or shower, and indicated

6   that he wanted to report the doctor there to the medical board.  The doctor

7   retaliated by withholding medication, which could have caused a seizure.  (*Id.*)

8   While Plaintiff was detained, his identity was stolen and his condo was

9   burglarized.  (*Id.* at 15-18.)  His wallet was later found in Las Vegas and an arrest

10  was made.  (*Id.* at 15.)  The police assigned the case a low priority and did not

11  take it seriously or perform an adequate investigation.  A car was rented in his

12  name and the car rental company accused him of stealing it, although he could

13  not have rented it.  (*Id.* at 16-17.)  Defendant Hutchens and her staff were served

14  with two court orders directing them to allow Plaintiff to place calls to financial

15  institutions, but he did not get the calls.  (*Id.* at 17.)  Plaintiff's credit was ruined,

16  he had to sell his condo at a loss, and he suffered other financial losses totaling

17  approximately $150,000.  (*Id.* at 15-18.)

18  During the same time period, the OCDA failed to disclose exculpatory

19  evidence in Plaintiff's pending cases.  One  piece of exculpatory evidence was

20  the arrest of Timothy Shenett, who used Plaintiff's identity in Buena Park.  (*Id.* at

21  17.)

22  Plaintiff should have been eligible for early-release credits allowing him to

23  be released from state prison in July 2016.  (*Id.* at 18.)  However, prosecutor

24  Nichols refused to send the required documentation because Plaintiff had filed a

25  federal action.  (*Id.* at 18-19.)  As a result, on August 10, 2016, "well after

26

27      [4]  That section allows for a person to be involuntarily detained for up to 72
28  hours for evaluation and treatment.  Cal. Welf. & Inst. Code § 5150(a).  It requires
    a showing of probable cause that the individual is "gravely disabled" or dangerous
    to himself or others as a result of a mental health disorder.  *Id.*

Plaintiff['s] release date," he was sexually assaulted in prison.  (*Id*. at 19.)

On June 28, 2017, the OCSD came to Plaintiff's apartment, took his computer, and damaged the kitchen floor.  Plaintiff suffered financial harm.  The search, seizure and arrest were wrongful.  (*Id.* at 20.)

## B.  Claims

The Fifth Amended Complaint states that it omits dismissed claims and, with one exception (Claim 14), appears to retain the Claim numbers from the Fourth Amended Complaint.  (FIAC, Dkt. No. 127 at 23.)

As best as can be discerned, Plaintiff asserts the following claims against Defendants: (1) Claim 4 against Hutchens and the County for failure to intervene and train jail staff regarding denial of restroom access (FIAC at 23-27); (2) Claim 5 against Rackauckas and the County for retaliatory delay in sending a police report (FIAC at 27-29); (3) Claim 6 against Hutchens and the County for denial of kosher meals (FIAC at 30-31); (4) Claim 8 against Hutchens for retaliatory and discriminatory failure to secure Plaintiff's property upon his arrest and failure to investigate the burglary and identity theft committed against him (FIAC at 31-34); (5) Claim 10 against Hutchens for denying Plaintiff his right to three free phone calls and for retaliatory taking of his clothes (FIAC at 35-38); (6) Claim 12 against Hutchens for inadequate medical care (FIAC at 38-40); and (7) Claim 14 against Hutchens and the County for wrongful search and seizure of his phone and laptop (FIAC at 40-42).  Plaintiff sues the individual Defendants in their official and individual capacities.  (*Id.* at 2-5.)  Plaintiff seeks monetary relief.

## III.

## LEGAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

1   the reasonable inference that the defendant is liable for the misconduct alleged.

2   The plausibility standard is not akin to a 'probability requirement,' but it asks for

3   more than a sheer possibility that a defendant has acted unlawfully.  Where a

4   complaint pleads facts that are 'merely consistent with' a defendant's liability, it

5   'stops short of the line between possibility and plausibility of "entitlement to

6   relief."'"  *Id.* (citations omitted).

7        In reviewing a complaint, "the tenet that a court must accept as true all of

8   the allegations contained in a complaint is inapplicable to legal conclusions.

9   Threadbare recitals of the elements of a cause of action, supported by mere

10  conclusory statements, do not suffice."  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550

11  U.S. 544, 555 (2007) ("labels and conclusions" or "formulaic recitation of the

12  elements of a cause of action" are insufficient).  A "naked assertion" without

13  factual enhancement is insufficient.  *Twombly,* 550 U.S. at 557.  "[W]here the

14  well-pleaded facts do not permit the court to infer more than the mere possibility

15  of misconduct," the complaint is subject to dismissal.  *Iqbal*, 556 U.S. at 679.

16       As a general rule, the court must limit its review to the operative complaint

17  and may not consider facts presented in briefs or extrinsic evidence.  *See Lee v.*

18  *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Materials submitted as

19  part of the complaint are not "outside" the complaint and may be considered.  *Id.*;

20  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19

21  (9th Cir. 1990).  Even if documents are not physically attached to the complaint,

22  they may be considered if their authenticity is uncontested and the complaint

23  necessarily relies on them.  *Lee,* 250 F.3d at 688.

24       A *pro se* complaint is to be liberally construed.  *Erickson v. Pardus*, 551

25  U.S. 89, 94 (2007) (per curiam).  Before dismissing a *pro se* civil rights complaint

26  for failure to state a claim, the plaintiff should be given a statement of the

27  complaint's deficiencies and an opportunity to cure them unless it is clear the

28  deficiencies cannot be cured by amendment.  *Eldridge v. Block*, 832 F.2d 1132,

8

1    1135-36 (9th Cir. 1987).  Nevertheless, "[u]nder Ninth Circuit case law, district

2    courts are only required to grant leave to amend if a complaint can possibly be

3    saved.  Courts are not required to grant leave to amend if a complaint lacks merit

4    entirely."  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

**IV.**

**DISCUSSION**

**A.  Introduction**

8        The Fifth Amended Complaint states that it omits dismissed claims.  (FIAC,

9    Dkt. No. 127 at 23.)

10        It appears that the Fifth Amended Complaint has retained the Claim

11   numbers from the Fourth Amended Complaint with one exception (Claim 14).

12   Therefore, the court addresses each *Monell* claim in conjunction with its

13   corresponding individual capacity claim.[5]  To the extent Plaintiff reasserts claims

14   that were previously dismissed without leave to amend, the claims should be

15   stricken as specious.  *See* Fed. R. Civ. P. 12(f) (court may on its own or on

16   motion strike from a pleading "any redundant, immaterial, impertinent, or

17   scandalous matter"); *Allen v. Cnty. of Los Angeles*, 2009 WL 666449, *3 (C.D.

18   Cal., Mar. 2009) ("this defective claim [which was previously dismissed with

19   prejudice] is specious and should be stricken pursuant to Fed. R. Civ. P. 12(f)");

20   *Lamumba Corp. v. City of Oakland*, 2006 WL 3086726, *4 (N.D. Cal., Oct. 30,

21   2006) ("if plaintiffs have re-asserted claims that were dismissed with prejudice . . .

22   these defective claims are specious and will be stricken").

23        The Fifth Amended Complaint names as defendants only Orange County,

24   Rackauckas and Hutchens.  As he did before, Plaintiff refers to alleged

25   constitutional violations by other individuals.  Plaintiff did not seek leave under

26

27        [5]  The court does not use the Claim numbers in Defendants' motion to
     dismiss because those Claim numbers do not track the FIAC or the prior Fourth
28   Amended Complaint.

1   Fed. R. Civ. P. 15 to add new defendants to the FIAC, and the FIAC lists only the

2   County, Rackauckas and Hutchens as defendants.  The court previously advised

3   Plaintiff that, if he wished to add new defendants in this case, he must file a

4   motion for leave to amend accompanied by a proposed amended complaint.

5   Given that Plaintiff has not done so, the court considers the alleged misdeeds of

6   other individuals as part of the supervisory liability claims and surviving *Monell*

7   claims against the County.

8                     **B.  <u>Legal Principles Applicable to All Claims</u>**

9                          **1.  Supervisory Liability**

10          Each government official "is only liable for his or her own misconduct."

11  *Iqbal*, 556 U.S. at 677.  Supervisory officials are not liable under § 1983 for the

12  actions of their subordinates on any theory of vicarious liability.  *Crowley v.*

13  *Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Hansen v. Black*, 885 F.2d 642,

14  645-46 (9th Cir. 1989).  A defendant may be held liable as a supervisor under

15  § 1983 if there exists either (1) personal involvement in the constitutional

16  deprivation, or (2) a sufficient causal connection between the supervisor's

17  wrongful conduct and the constitutional violation.  *Starr v. Baca*, 652 F.3d 1202,

18  1207 (9th Cir. 2011).  The causal connection may be established by setting in

19  motion a series of acts by others, or by knowingly refusing to terminate a series of

20  acts by others, that the supervisor knew or reasonably should have known would

21  cause others to inflict a constitutional injury.  *Id*. at 1207–08.  "A supervisor can

22  be liable in his individual capacity for his own culpable action or inaction in the

23  training, supervision, or control of his subordinates; for his acquiescence in the

24  constitutional deprivation; or for conduct that showed a reckless or callous

25  indifference to the rights of others." *Id.* at 1208 (citation omitted).

26          A supervisory official may be liable in his individual capacity for failure to

27  train if the official "was deliberately indifferent to the need to train subordinates,

28  and the lack of training actually caused the constitutional harm or deprivation of

1    rights." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014).

2            **2.  *Monell***

3            A local governmental entity such as the County may not be held liable

4    "under a theory of respondeat superior for the actions of its subordinates." *Castro*

5    *v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (citing

6    *Monell*, 436 U.S. at 690-91).  The County is liable only for injuries caused by its

7    official policies or longstanding customs.  *Monell*, 436 U.S. at 694. To state a

8    *Monell* claim, a plaintiff must allege that:  (1) the plaintiff was deprived of a

9    constitutional right; (2) the County had a policy, practice or custom that caused

10   the constitutional deprivation; and (3) the County's policy, practice or custom

11   "was adhered to with 'deliberate indifference to the constitutional rights of [the

12   jail's] inhabitants.'" *Castro*, 833 F.3d at 1076 (citation omitted).

13           "Official municipal policy includes the decisions of a government's

14   lawmakers, the acts of its policymaking officials, and practices so persistent and

15   widespread as to practically have the force of law." *Connick v. Thompson*, 563

16   U.S. 51, 61 (2011); *see also Monell*, 436 U.S. at 690-91, 694.  A municipality may

17   be liable for failure to implement procedural safeguards to prevent constitutional

18   violations when (1) the defendant was on actual or constructive notice that its

19   omission would likely result in a constitutional violation and (2) the defendant's

20   policy caused the violation in that the defendant could have prevented the

21   violation with an appropriate policy.  *Jackson v. Barnes*, 749 F.3d 755, 763 (9th

22   Cir. 2014).  A municipality is liable only if there is "a direct causal link" between its

23   policies or customs and the alleged constitutional violation.  *Villegas v. Gilroy*

24   *Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (quoting *City of Canton v.*

25   *Harris*, 489 U.S. 378, 385 (1989)).  Additionally, liability for improper custom or

26   practice "may not be predicated on isolated or sporadic incidents," but must be

27   "founded upon practices of sufficient duration, frequency and consistency that the

28   conduct has become a traditional method of carrying out policy."  *Trevino v.*

                                            11

1    *Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

2         A municipality may be liable for a failure to train its employees if the failure

3    to train amounts to deliberate indifference.  *Flores*, 758 F. 3d at 1158.  A plaintiff

4    can show deliberate indifference if the municipality "disregarded the known or

5    obvious consequence that a particular omission in their training program would

6    cause [municipal] employees to violate citizens' constitutional rights," which

7    usually requires proof of a "pattern of similar constitutional violations by untrained

8    employees."  *Id.* at 1159.  Alternatively, a plaintiff may seek to impose "single

9    incident" liability under a "narrow range of circumstances" where "the

10   unconstitutional consequences of failing to train [are] so patently obvious that a

11   [municipality] could be liable under § 1983 without proof of a pre-existing pattern

12   of violations."  *Connick*, 563 U.S. at 63-64.

13        An official capacity suit against a local government employee is the

14   equivalent of a suit against the local governmental entity itself.  *Kentucky v.*

15   *Graham*, 473 U.S. 159, 165-66 (1985).

16        **C.  Claim 4 (Restroom Access)**

17        In Claim 4, Plaintiff asserts a Fourteenth Amendment claim against

18   Defendant Hutchens and the County based on deputy John Doe's April 10, 2015

19   denial of restroom access to Plaintiff for 14 to 16 hours and Defendants' failure to

20   train deputies to allow inmates access to the restroom and to intervene when

21   other deputies deny restroom access.  (FIAC at 5, 24-27.)

22        **1.  Defendant Hutchens**

23        Plaintiff alleges a supervisory liability claim against Defendant Hutchens.

24   (FIAC at 24.)  Assuming that Plaintiff has alleged an underlying Fourteenth

25   Amendment violation based on denial of restroom access for 14 to 16 hours, the

26   court previously advised Plaintiff that he failed to allege a link between any acts

27   or omissions of Defendant Hutchens and the deputy's refusal to allow Plaintiff to

28   use the restroom.  The court found that Plaintiff's conclusory allegation that it was

1  Hutchens' policy and practice to allow her staff to engage in abusive behavior
2  was insufficient.  The FIAC contains no factual allegations indicating that
3  Hutchens knew jail deputies were denying inmates restroom access.  Plaintiff
4  does not allege that Hutchens had received complaints about restroom access, or
5  even that similar prior incidents had occurred (including during Plaintiff's own
6  prior detentions).  *Compare Starr*, 652 F.3d at 1216-17 (plaintiff alleged sheriff
7  received notice of numerous prior incidents).  As for Plaintiff's failure-to-train
8  claim, the FIAC contains no facts supporting his conclusory allegation that OCSD
9  deputies are not trained to allow inmates to use the restroom.  *Flores*, 758 F.3d at
10 1159-60.  Although Plaintiff conclusorily alleges a failure to intervene, the
11 complaint does not allege that any other jail staff was present during the April 10,
12 2015 incident.

13      It is recommended that the Court grant Defendants' motion to dismiss
14 Claim 4 without leave to amend in this 2016 action.  *See Iqbal*, 556 U.S. at 677
15 (supervisory official responsible only for own misconduct).  Plaintiff previously
16 received leave to amend Claim 4 against Hutchens and has not cured the
17 deficiencies.  *See Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir.
18 1999) (district court's discretion to deny leave to amend is "particularly broad"
19 when plaintiff has previously received leave to amend).

20      **2.  *Monell***

21      After *Iqbal*, a plaintiff must specifically describe the alleged policies or
22 customs that caused the constitutional violation.  *See AE v. Cnty. of Tulare*, 666
23 F.3d 631, 636 (9th Cir. 2012) (requiring "allegation of plausible facts supporting
24 such a policy or custom" at pleading stage)*; Little v. Gore,* 148 F. Supp. 3d 936,
25 957 (S.D. Cal. 2015) ("Courts in this circuit now generally dismiss claims that fail
26 to identify the specific content of the municipal entity's alleged policy or custom.").

27      This court previously advised Plaintiff that he has not alleged facts
28 supporting any County policy, custom or practice of denying restroom access to

1   jail detainees.  Nor has he alleged facts showing that the County had actual or

2   constructive notice that an omission in the training program would cause OCSD

3   employees to violate constitutional rights of detainees through denying restroom

4   access.  *See Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016).

5   Once again, he has failed to state a *Monell* claim.

6       It is recommended that Defendants' motion to dismiss *Monell* Claim 4 be

7   granted without leave to amend.  Plaintiff previously received leave to amend this

8   *Monell* claim and was unable to cure its deficiencies.  *See Griggs*, 170 F.3d at

9   879.

10      **D.  Claim 5 (Delay in Sending Police Report to Prison/Retaliation)**

11      In Claim 5, Plaintiff asserts that OCDA deliberately delayed sending his

12  police report to prison authorities in retaliation for his filing habeas actions in this

13  court.  The prison needed the police report to determine his eligibility for early

14  release time credits.  (FIAC at 18-19, 27-29.)

15      The District Court previously denied Defendants' motion to dismiss Claim 5

16  against Rackauckas and *Monell* Claim 5.  (Order, Dkt. No. 123; Order, Dkt. No.

17  87.)  Although Defendants' motion is directed at Claim 5, Defendants identify

18  different allegations and do not separately discuss the claim regarding delay in

19  sending the police report to the prison or offer arguments for dismissal.  Out of an

20  abundance of caution, and in the absence of particularized briefing, it is

21  recommended that Defendants' motion to dismiss Claim 5 and *Monell* Claim 5 be

22  denied.

23      **E.  Claim 6 (Kosher Diet)**

24      Plaintiff alleges that he was denied a kosher diet in May 2017, and again

25  from October 11 to November 24, 2018.  He applied for a kosher diet but did not

26  receive it.  He submitted grievances, but never heard back.  (FIAC at 30-31.)

27      Inmates have a "right to be provided with food sufficient to sustain them in

28  good health that satisfies the dietary laws of their religion."  *McElyea v. Babbitt*,

1   833 F.2d 196, 198 (9th Cir. 1987) (per curiam).  Inmates, however, must comply

2   with the institution's procedures for requesting a kosher diet.  *Resnick v. Adams*,

3   348 F.3d 763, 772 (9th Cir. 2003).  Assuming Plaintiff has adequately stated a

4   violation of his First Amendment right to free exercise of religion, he has not

5   sufficiently alleged a factual basis for asserting the claim against Defendant

6   Hutchens.  He does not allege facts showing that Hutchens knew that he was

7   being denied a kosher diet or was in some manner responsible for the failure to

8   provide him with one.  His allegation that Hutchens failed to train jail staff to honor

9   inmates' religious beliefs is entirely conclusory.  *See Iqbal*, 556 U.S. at 677.

10      As for his *Monell* claim, Plaintiff has not corrected the deficiencies that led

11  to previous dismissals of the same claim in prior complaints.  Plaintiff's allegation

12  that the County has a policy and practice of denying inmates their rights to

13  practice their religious beliefs is entirely conclusory.  There is no factual basis for

14  inferring that Plaintiff was denied kosher meals pursuant to a County policy or

15  practice.  Once again, he has not alleged a plausible *Monell* claim.  *See AE*, 666

16  F.3d at 636*; Little,* 148 F. Supp. 3d at 957.

17      It is recommended that Defendants' motion to dismiss Claim 6 and *Monell*

18  Claim 6 be granted without leave to amend because Plaintiff was previously

19  granted leave to amend and was unable to cure its deficiencies.  *See Griggs*, 170

20  F.3d at 879.

21      **F.  Claim 8 (Failure to Secure Plaintiff's Property and Investigate**

22          **Crime)**

23      In Claim 8, Plaintiff alleges an individual capacity claim against Defendant

24  Hutchens.  Plaintiff contends that OCSD owed him a duty to secure his residence

25  after he was taken into custody.  They did not do so.  Plaintiff's valuables were

26  stolen and his identity was stolen by a convicted felon.  Instead of investigating

27  that crime, the OCSD made a "non-criminal report" and forwarded it to OCDA

28  Investigator McLean.  (FIAC at 32-34; *Id.* at 15-18.)

1         As this court previously explained, "nothing in the language of the Due
2   Process Clause itself requires the State to protect the life, liberty and property of
3   its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty.*
4   *Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989.  The Ninth Circuit has recognized
5   an exception when the state creates a "special relationship" with a person, as by
6   placing him in custody. *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992).
7   Plaintiff argues that this exception applies to his situation because he "was not
8   given a reasonable amount [of] time to answer the door."  (FIAC at 33.)  Even
9   assuming without deciding that a cognizable due process claim is available, the
10  mere fact that Plaintiff's house was burglarized while he was in custody is not
11  enough.  To impose individual liability on Defendant Hutchens, Plaintiff must link
12  the OCSD deputies' failure to secure his residence to some act or omission on
13  her part, or to a policy for which she is responsible. *See Iqbal*, 556 U.S. at 677;
14  *Starr*, 652 F.3d at 1207.  Plaintiff has failed to allege any link between Hutchens
15  and any wrongful conduct by deputies.

16        Police officers also do not have an affirmative duty to investigate crimes in
17  a particular manner or to protect one citizen from another. *Gini v. Las Vegas*
18  *Metropolitan Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (allegations that
19  police hindered investigation of plaintiff's theft complaint failed to state claim); *see*
20  *Andersen v. Helzer*, 551 Fed. Appx. 363 (9th Cir. 2014) (affirming dismissal when
21  plaintiff failed to allege facts "showing that defendants violated any federally
22  protected right by allegedly failing to investigate the theft of his property").  Again,
23  Plaintiff has not alleged facts linking Defendant Hutchens to the deficient
24  investigation. *Iqbal*, 556 U.S. at 677; *Starr*, 652 F.3d at 1207.

25        It is recommended that Defendants' motion to dismiss Claim 8 be granted
26  without leave to amend because Plaintiff has had ample opportunity to try to
27  amend this claim and has been unable to cure the deficiencies. *See Griggs*, 170
28  F.3d at 879.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.  **Claim 10 (Phone Calls)**

In Claim 10, Plaintiff alleges an individual capacity claim against Defendant Hutchens based on supervisory liability.  Plaintiff alleges that when he was detained in April 2015 and March 2017, jail staff deprived him of his statutory right under Cal. Penal Code 851.5(a)(1) to make three free phone calls within the first three hours.  (FIAC at 37.)  After his April 15, 2015 arrest, Plaintiff was denied a phone call for four days, and after his March 28, 2017 arrest, he was denied a phone call for six days.  (*Id*. at 70.)  To the extent jail records show he did not receive phone calls because he was "agitated" or placed in a Cal. Welf. & Inst. Code § 5150 hold, Plaintiff alleges such placement was in retaliation for his request to call an attorney.

California arrestees have a protected liberty interest under the Due Process Clause in making three phone calls: one to legal counsel, one to a bail bondsperson, and one to a relative or other person.  *See Carlo v. City of Chino*, 105 F.3d 493, 499-500 (9th Cir. 1997) (citing Cal. Penal Code § 851.5); *see also Maley v. Cnty. of Orange*, 224 Fed. Appx. 591, 952-53 (9th Cir. 2007).  But Plaintiff has not linked the alleged refusal to allow him to make three permissible phone calls to any policy adopted by Defendant Hutchens, or to any other act or omission by her.  *See Starr*, 652 F.3d at 1207.  His allegation that it is Hutchens's "policy, practice and procedure to commit misconduct by violation Penal Code § 851.5(a)(1)" is purely conclusory.  (FIAC at 37-38.)  Plaintiff, therefore, has not stated a claim against Hutchens on this basis.  The *Monell* portion of Claim 10 was previously dismissed and the FIAC does not contain facts showing a County policy or practice that resulted in the deprivation of Plaintiff's statutory right to three phone calls.  Once again, Plaintiff has not alleged a plausible *Monell* claim.  *See AE*, 666 F.3d at 636*; Little,* 148 F. Supp. 3d at 957.

It is recommended that Defendants' motion to dismiss Claim 10 be granted without leave to amend because he has been unable to cure its deficiencies

1    despite previous opportunities to do so.  *See Griggs*, 170 F.3d at 879.

2         **H.  Claim 12 (Medical Care)**

3         In Claim 12, Plaintiff alleges an individual capacity claim against Defendant

4    Hutchens based on supervisory liability.  (FIAC at 38-40.)  Plaintiff contends that,

5    for nine months, jail doctors prescribed Zyprexa for him, which was the wrong

6    medication, until he was switched to mirtazaphine.  (*Id.* at 39.)  A jail physician

7    retaliated against Plaintiff for wanting to report him to the Medical Board by failing

8    to provide proper medication, an act that could have caused a seizure.  (*Id.*)

9    Plaintiff also contends that the physician retaliated by failing to intervene to

10   prevent jail staff from returning him to the same housing where he was previously

11   beaten by other inmates.  (*Id*.)

12        Plaintiff alleges that Defendant Hutchens has a policy of refusing to hire

13   competent medical staff trained to deal with mental health patients.  He alleges

14   that jail medical staff does not properly diagnose people with mental illness and

15   routinely prescribes Zyprexa for mental health patients although "in most cases it

16   is the wrong medicine."  (*Id.* at 38-39.)  These allegations are insufficient to

17   support a claim against Defendant Hutchens.  Plaintiff has not alleged facts

18   showing that she was involved in the prescribing decisions of jail medical staff or

19   adopted policies regarding appropriate medications for mental health patients.

20   Plaintiff has not alleged facts that Hutchens was on notice of any issues with

21   prescribing Zyprexa for any mental health patients.  His allegation that she had a

22   policy of hiring incompetent medical staff is too conclusory to support liability.

23   *See Starr*, 652 F.3d at 1207.

24        As for Plaintiff's allegations that a physician retaliated against him for his

25   threat to report him to the Medical Board by withholding medication and failing to

26   prevent deputies from returning him to the same housing where he had been

27   beaten, the FIAC is devoid of factual allegations linking these acts and omissions

28   to any act or omission of Defendant Hutchens.  Plaintiff does not allege any facts

1    indicating that Hutchens was personally involved or on notice of such actions by

2    medical staff.  *See Iqbal*, 556 U.S. at 678; *Starr*, 652 F.2d at 1207.  Plaintiff has

3    not alleged a factual basis for holding her liable.

4            It is recommended that Defendants' motion to dismiss this claim be granted

5    without leave to amend because Plaintiff has previously received leave to amend

6    and has been unable to cure its deficiencies.  *See Griggs*, 170 F.3d at 879.

7            **I.    Claim 14 (Search and Seizure)**

8            In Claim 14, Plaintiff alleges an individual capacity claim against Defendant

9    Hutchens based on supervisory liability.  (FIAC at 40-42.)

10           Plaintiff alleges that his phone and laptop were seized on November 27,

11   2018, and he was detained for seven days, based on a parole revocation

12   proceeding that the OCDA filed but later "dismissed with no probable cause."  (*Id.*

13   at 41.)  Deputies obtained the key to his residence by telling the manager that if

14   he did not give them the key, they would have to "kick in the door."  (*Id.*)

15   Plaintiff's father passed away while Plaintiff was either incarcerated or being

16   released.  (*Id.*)

17           Under California law, a parolee is "subject to search or seizure by a

18   probation or parole officer or other peace officer at any time of the day or night,

19   without or without a search warrant or with or without cause."  Cal. Penal Code §

20   3067(b)(3); *see United States v. Johnson*, 875 F.3d 1265, 1275 (9th Cir. 2017)

21   (holding that warrantless searches of parolee's cell phone were constitutionally

22   reasonable); *see also United States v. Peterson*, 995 F.3d 1061, 1068 (9th Cir.)

23   (same), *cert. denied*, 142 S. Ct. 472 (2021).  The mere allegation that the OCDA

24   ultimately dismissed the parole revocation case it filed is not sufficient to establish

25   a Fourth Amendment violation.

26           Plaintiff has also failed to link any misconduct to Defendant Hutchens, who

27   is not alleged to have had any factual basis to know that the parole revocation

28   would ultimately be dismissed by the OCDA, or that the search or seizure were

1   unlawful.  Plaintiff has not identified any specific deficiency in the OCSD training

2   program.  *See Flores*, 758 F.3d at 1159-60.

3         It is recommended that Defendants' motion to dismiss Claim 14 be granted

4   without leave to amend.  Plaintiff was previously advised of the elements of

5   supervisory liability and has not cured the deficiencies in his new Claim 14.  *See*

6   *Griggs*, 170 F.3d at 879.

7         **J.   Qualified Immunity**

8         Defendant Hutchens contends that she is entitled to qualified immunity.

9   "The doctrine of qualified immunity protects government officials 'from liability for

10  civil damages insofar as their conduct does not violate clearly established

11  statutory or constitutional rights of which a reasonable person would have

12  known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  On a

13  motion to dismiss, the court must determine (1) whether the facts alleged, taken

14  in the light most favorable to the party asserting the injury, show that the

15  defendant's conduct violated a constitutional or statutory right, and (2) whether

16  that right was clearly established at the time of the violations*.  Community House,*

17  *Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Saucier v. Katz*, 533

18  U.S. 194, 201 (2001), modified by *Pearson*).  The Supreme Court has reiterated

19  that " 'clearly established law' should not be defined 'at a high level of generality,'

20  " but "must be 'particularized' to the facts of the case."  *White v. Pauly*, 137 S. Ct.

21  548, 552 (2017) (citations omitted).  "To be clearly established, a right must be

22  sufficiently clear that every reasonable official would have understood that what

23  he is doing violates that right."  *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)

24  (citation omitted).

25        Because the court is recommending that the claims except Claim 5 against

26  Defendant Rackauckas and *Monell* Claim 5 be dismissed for failure to state a

27  claim, it is unnecessary to address Defendant Hutchens' qualified immunity

28  defense.  As for Claim 5, given the "fact-specific, highly contextualized nature of

1   the 'clearly established' analysis," *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th

2   Cir. 2016), and the absence of particularized arguments regarding this claim in

3   Defendants' motion, it would be premature to determine on this record whether

4   Defendant Rackauckas is entitled to qualified immunity.

5        **K.   Hutchens' Death**

6        Defendants have notified the court that Defendant Hutchens passed away

7   on January 4, 2021.  (Motion at 11.)  Plaintiff requests that the court substitute

8   her estate as a defendant under Fed. R. Civ. P. 17.  Because the court

9   recommends that all claims against her be dismissed without leave to amend, it is

10   unnecessary to address Plaintiff's request for substitution of Hutchens' estate.

11        **L.   Motion for a More Definite Statement**

12        In light of the recommendation that all claims except Claim 5 and *Monell*

13   Claim 5 be dismissed under Rule 12(b)(6), it is recommended that Defendants'

14   motion for a more definite statement be denied.

15                                    **V.**

16                          **RECOMMENDATION**

17        For the reasons discussed above, it is recommended that the District Court

18   issue an order:

19        (1) accepting this Report's findings and recommendations;

20        (2) granting Defendants' motion to dismiss *Monell* Claims 4 and 6, and

21   Claims 4, 6, 8, 10, 12, and 14 without leave to amend;

22        (3) dismissing Defendant Hutchens from this action;

23        (4) denying Defendants' motion to dismiss Claim 5 against Defendant

24   Rackauckas and *Monell* Claim 5;

25        (5) denying Defendants' motion for a more definite statement;

26        (6) denying Plaintiff's request to substitute Defendant Hutchens' estate as

27   moot; and

28        (7) requiring Defendants Rackauckas and Orange County to respond to the

1 | sole surviving claims – Claim 5 and *Monell* Claim 5 – within 30 days after entry of
2 | the District Court's order.
3 |
4 | DATED: May 27, 2022
5 |
6 |
7 |

ALICIA G. ROSENBERG
United States Magistrate Judge